


UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHAUN OWENS, | NO. CIV. 2:12-419 WBS JFM |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| WALGREEN CO. and DOES 1 through 100, inclusive, | |
| Defendant. | |

----oo0oo----

Plaintiff Shaun Owens brought this action against defendant Walgreen Co. ("Walgreen") arising out of defendant's allegedly discriminatory employment practices on the basis of plaintiff's race and mental disability.  Presently before the court is defendant's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b).  (Docket No. 4.)

I.   Factual and Procedural Background

In August 2007, plaintiff was hired by defendant as a

1  manager in training ("MGT"). (Compl. ¶ 8.) Plaintiff began his
2  employment in Store 7313 in Modesto, California. (Id. ¶ 9.) On
3  March 17, 2008, plaintiff was notified by Executive Assistant
4  Manager ("EXA") Andrew Terry of an opportunity to transfer to
5  Store 6355, also in Modesto, California. (Id. ¶¶ 9-10.)
6  Plaintiff alleges that Terry, who like plaintiff is an African
7  American, warned him about the manager at Store 6355, Adriana
8  Frias, saying "Watch out for Frias, she's been known to not take
9  kindly to managers of color." (Id. ¶ 9.)

10            Plaintiff alleges various verbal confrontations with
11 Frias that stemmed from his requests for additional training.
12 (Id. ¶¶ 12-14.) On April 4, 2008, plaintiff called Walgreen's
13 toll-free, confidential hotline for complaints to report how
14 Frias was treating him. (Id. ¶ 15.) On April 5, 2008, plaintiff
15 spoke with Loss Prevention/Human Resources Representative Derrick
16 Chan and informed Chan that Frias "was treating him unfairly
17 because of his race in terms of the shifts he was assigned, the
18 lack of time off he was being provided and the way she was
19 treating him differently than other employees." (Id.) Chan
20 instructed plaintiff to write out a timeline detailing what had
21 happened and indicated that he would look into the situation.
22 (Id.)

23            On April 9, 2008, plaintiff was working the night shift
24 when he witnessed a masked gunman loading prescription drugs into
25 a duffle bag while the pharmacist held up her hands. (Id. ¶ 16.)
26 Plaintiff, the pharmacy tech, pharmacist, and a customer escaped
27 to the warehouse where, once behind the locked door, plaintiff
28 dialed 911. (Id.) Following the robbery, plaintiff requested

2

that Frias give him a day or two off work, but Frias refused and scheduled plaintiff to work the day after the robbery. (Id. ¶ 17.)

On April 11, 2008, Frias told plaintiff he had made an error on the cash report. (Id. ¶ 19.) Plaintiff replied that "he was still shook up from the robbery incident, that his focus was off, and that he was nervous closing the store alone." (Id.) Frias told plaintiff that, "That's no excuse. You've worked here nine months. You shouldn't be making mistakes." (Id.)

After learning about a Walgreen counseling program, plaintiff expressed interest in receiving counseling on or about April 24, 2008. (Id. ¶ 21.) Plaintiff alleges that Frias became angry with him because he wanted to open a counseling claim, but that Frias contacted the claims administrator so that plaintiff could put in a claim for benefits. (Id.)

In May 2008, plaintiff met again with Chan and explained that Frias was singling him out, treating him unfairly, denying him training opportunities, and scheduling him only for night shifts. (Id. ¶ 26.) Plaintiff stated that he believed that the basis for the unfair treatment was his race. (Id.) Plaintiff also informed Chan that the robbery was having a negative impact on him and that "I'm kind of screwed up. I'm constantly watching the door." (Id.)

On May 21, 2008, plaintiff began to receive counseling from licensed therapist Pamela Mello. (Id. ¶ 27.) Plaintiff states that he was suffering from serious emotional distress including sleep deprivation, headaches, stomach aches, anxiety, and depression. (Id.)

     In May 2008, plaintiff contacted Walgreen District Manager Linda DeFranzo and requested a transfer. (Id. ¶ 28.) Plaintiff initially requested a transfer because of the high cost of gasoline and his long commute. (Id.) After speaking with DeFranzo, plaintiff admitted that the real reason for his transfer request was that Frias harassing was him and treating him differently from other employees because of his race. (Id.) DeFranzo informed plaintiff that she would speak with Frias. (Id.)

     On May 23, 2008, plaintiff was written up by Frias for not completing a work list and for cash handling errors. (Id. ¶ 29.) Plaintiff alleges that other employees were not written up for similar behavior. (Id. ¶¶ 30-31.)

     While at work on May 28, 2008, plaintiff began to feel nervous, anxious, his vision blurred, and he became dizzy. (Id. ¶ 33.) Plaintiff left work and was treated at St. Joseph's Medical Center in Stockton, California. (Id.) Plaintiff was prescribed medication and referred to Dr. John Chellsen, a psychiatrist at St. Johnson's Occupational Heath. (Id.) Dr. Chellsen took plaintiff off work for approximately five months. (Id.)

     On September 15, 2008, plaintiff was notified that he was being transferred to Store 2680 in Stockton, California. (Id. ¶ 34.) Plaintiff returned to work at Store 2680 on October 27, 2008, under store manager Robert Scheven. (Id.) Despite assurances that he would not be working alone, plaintiff worked the graveyard shift by himself several days in the week following his return. (Id.)

1    On December 24, 2008, Scheven gave plaintiff a verbal
2 warning for an error on a cash drop. (Id. ¶ 39.) Plaintiff felt
3 "increasingly anxious at work and continued to have difficulty
4 sleeping." (Id.) Plaintiff also suffered from headaches and
5 stomach aches and had intense crying fits and depression. (Id.)
6    On January 19, 2009, plaintiff was written up by
7 Scheven using the store's DVR monitor without permission or
8 authorization. (Id. ¶ 40.) Plaintiff explained that he was
9 trained on the DVR monitor and provided the passcode by MGT Aaron
10 Ring, a Caucasian employee with the same job title as plaintiff,
11 but with less seniority. (Id.) On the write up, plaintiff
12 indicated that he loved working at Walgreen, was concerned that
13 he had been transferred because of problems with Frias, and that
14 he knew that Scheven and Frias were dating. (Id.)
15    Later that day, plaintiff was approached by another
16 Walgreen employee who stated that plaintiff looked extremely
17 depressed and sad. (Id. ¶ 41.) The employee stated that,
18 "Scheven gets rid of good people, especially the black ones."
19 (Id.)
20    On February 12, 2009, plaintiff was written up for cash
21 handling errors. (Id. ¶ 43.) The write up noted, "Cash handling
22 mistakes will lead to future disciplinary actions up to and
23 including termination." (Id.) Plaintiff noted on the write up,
24 "I hope that I am not the only MGT being written up for cash
25 handling. I have not heard of any others being written up."
26 (Id.)
27    On February 20, 2009, plaintiff met with Walgreen Loss
28 Prevention Representative Denver Floyd and Corporate Human

5

1  Resources Manager Connie Spelstrum.  (Id. ¶ 45.)  Plaintiff
2  informed Floyd and Spelstrum about the "emotional distress he was
3  enduring at work which was caused by the discriminatory and
4  hostile treatment by" Walgreen management.  (Id.)  Specifically,
5  plaintiff indicated that Frias and Scheven were retaliating
6  against him for complaining.  (Id.)  He further explained that he
7  was having issues because of the robbery and that he felt that
8  the managers were treating him differently because of his race.
9  (Id.)

10            Also on February 20, 2009, plaintiff was approached by
11 Walgreen District Manager Joe Friello to discuss his complaints.
12 (Id. ¶ 46.)  Friello explained that plaintiff was going to be
13 transferred to the March Lane Store.  (Id.)

14            On February 26, 2009, plaintiff faxed a letter to Floyd
15 detailing incidents regarding Scheven.  (Id. ¶ 47.)  Plaintiff
16 indicated that he wanted to work in an environment where he was
17 not judged by the color of his skin and that he aspired to become
18 a Walgreen Store Manager.  (Id.)

19            On February 29, 2009, plaintiff began working at the
20 March Lane store.  (Id. ¶ 48.)  Plaintiff noticed that Scheven
21 was visiting the March Lane store and calling the Store Manager,
22 Angie Smith.  (Id.)

23            On March 29, 2009, plaintiff overslept, arrived late at
24 work, and opened the store over an hour late.  (Id. ¶ 49.)
25 Plaintiff was not feeling well and "believed it was due to the
26 stress caused by the treatment he received from" Walgreen
27 managers.  (Id.)  Later that day, EXA William Espinoza told
28 plaintiff that MGT Garret Memory also opened late a few months

6

prior and did not receive a write up. (Id. ¶ 50.) Espinoza offered that plaintiff could stay late to make up the lost time, but plaintiff told Espinoza that he believed that it was against company policy to make up lost time and that he did not want to get in more trouble. (Id.) Plaintiff told Espinoza that he was going to take his "happy, fat black butt home." (Id.)

On April 2, 2009, plaintiff overheard Smith speaking with Friello on speaker phone about what action to take regarding plaintiff opening the store late. (Id. ¶ 53.) Plaintiff heard Friello acknowledge that they did not write up Memory for the same conduct, but that they were going to suspend plaintiff. (Id.) Plaintiff was asked into a meeting with Smith and Walgreen Loss Prevention/HR Representative Shawna Charles, where plaintiff was asked about opening the store late, concerns regarding punching in and out, and DVR recordings of him taking long lunches. (Id.) Plaintiff stated that he had made race discrimination claims to Floyd. (Id.) At the end of the meeting, plaintiff was suspended. (Id.)

On April 15, 2009, plaintiff received a letter from Smith terminating him for gross misconduct. (Id. ¶ 55.) The letter listed the March 29 incident of opening the store late, for refusing to stay late to make up the lost time, for stating that he was going to "take your black ass home," and for taking a lunch break on April 2 without clocking out. (Id.)

Plaintiff alleges that he was contacted by Charles shortly after his termination and that she told him that she believed his termination was unjustified. (Id. ¶ 56.)

On February 18, 2010, plaintiff submitted a complaint

7

to the California Department of Fair Employment and Housing ("DFEH").[1] (Id. ¶ 6.) On December 23, 2010, the DFEH issued plaintiff a right-to-sue letter. (Id.)

On December 22, 2011, plaintiff filed a complaint in state court alleging seven causes of action under California's Fair Employment and Housing Act ("FEHA"): (1) Discrimination Based on Race (Cal. Gov't Code §§ 12940(a), 12920); (2) Discrimination Based on Disability (id. § 12940(a)); (3) Failure to Accommodate Disability (id. § 12940(m)); (4) Failure to Engage in Interactive Process (id. § 12940(n)); (5) Retaliation (id. § 12940(h)); (6) Failure to Prevent Discrimination and/or Retaliation (id. § 12940(k)); and (7) Wrongful Termination in Violation of Public Policy. (Docket No. 1 Ex. A.) Defendant removed the case to federal court on the basis of diversity jurisdiction. (Id.)

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable

---

[1] When deciding a motion to dismiss, a court may not ordinarily consider material other than the facts alleged in the complaint. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must be treated as a motion for summary judgment . . . if either party . . . submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials."). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Plaintiff attached a copy of the DFEH complaint as an exhibit to his opposition to the motion to dismiss. As the existence of the DFEH complaint is alleged in the Complaint, is central to plaintiff's claims, and neither party has questioned its authenticity, the court may consider the DFEH complaint as part of the Complaint.


inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, ----, 129 S. Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

      A.   <u>Discrimination Based on Race (Claim One)</u>

         Plaintiff's first cause of action alleges discrimination based on race under FEHA.  FEHA makes it illegal for an employer "because of the race . . . of any person, to refuse to hire or employ the person."  Cal. Gov't Code § 12940(a).  Plaintiff's first cause of action under FEHA stems from defendant's allegedly discriminatory conduct due to plaintiff's race.

         Before a plaintiff can pursue a FEHA claim, the plaintiff must exhaust all administrative remedies and receive a right to sue notice from the DFEH.  <u>Romano v. Rockwell Int'l, Inc.</u>, 14 Cal. 4th 479, 492 (1996).  In order for an administrative complaint to be timely, it must be filed within "one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred."  Cal. Gov. Code § 12960;

9

Romano, 14 Cal. 4th at 492; Accardi v. Superior Court, 17 Cal. App. 4th 341, 349 (2d Dist. 1993). Plaintiff alleges that he submitted a complaint to the DFEH on February 18, 2010, and was issued a right to sue letter on December 23, 2010. (Compl. ¶ 6.)

The majority of the allegedly discriminatory conduct plaintiff describes in his Complaint occurred more than one year before plaintiff filed his DFEH complaint. None of the allegedly discriminatory conduct by Frias or Scheven occurred after February 18, 2009, in part because plaintiff was transferred to the March Lane store on February 29, 2009. Plaintiff does not allege in his Complaint that defendant engaged in any discriminatory conduct on the basis of his race after February 18, 2009. Plaintiff argues in his opposition to the motion to dismiss that "[t]he decision to terminate was racially motivated by Frias and Shreven," (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7:21-22 (Docket No. 7)), however, plaintiff's Complaint does not allege that his termination was racially motivated.[2] Plaintiff nonetheless contends that, under "cat's paw" liability and the continuing violation doctrine, the court should consider defendant's allegedly discriminatory conduct that occurred prior to February 18, 2009.

---

[2] In his Complaint, plaintiff alleges that "Defendant's termination of Plaintiff based upon his physical disability, complaints, requests for reasonable accommodation, and need to engage in the interactive process violated important public policy . . . ." (Compl. ¶ 95.) Plaintiff argues that facts setting forth the existence of retaliation and wrongful termination based on race discrimination are incorporated into each cause of action by reference, however, the court will not read into a cause of action a claim for race discrimination where none is affirmatively pled. Plaintiff therefore fails to plead a cause of action alleging retaliation on the basis of race.

10

1              1.   <u>"Cat's Paw" Liability</u>

The "cat's paw" theory of liability provides that where a subordinate "sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process." <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1182 (9th Cir. 2007). Plaintiff argues that the court should apply the "cat's paw" theory of liability in this case because Friello, who oversaw Frias and Scheven, was involved in the decision to terminate plaintiff. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7:21-25.)

Plaintiff does not allege any facts suggesting that Frias' and Scheven's discriminatory conduct set in motion the proceedings leading to plaintiff's termination. Although plaintiff represented oral arguments that paragraphs 45 and 53 of the Complaint establish that Frias and Scheven were involved in the decision to terminate him, those paragraphs do not actually allege Frias and Scheven's involvement nor do they permit the court to make such an inference. (<u>See</u> Compl. ¶¶ 45, 53.) The only motivations alleged by plaintiff for his termination were those he describes as being listed in his termination letter dated April 15, 2009: "opening the store late, for refusing to stay late to make up the lost time, for stating he was going to 'take your black ass home,' for taking a lunch break on April 2nd without clocking out, then taking additional time to eat his

11

lunch upon his return." (Id. ¶ 55.)  Each of these actions occurred after plaintiff transferred to the March Lane store and while he was under the supervision of store manager Smith, who plaintiff does not allege engaged in any discriminatory conduct. Plaintiff therefore fails to allege any facts suggesting that Smith and Friello's independent decision to terminate him was the result of Frias' and Scheven's allegedly discriminatory conduct.

        2.   Continuing Violation Doctrine

Under the continuing violation doctrine, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1056 (2005).  The continuing violation doctrine applies when an employer's unlawful acts are: (1) sufficiently similar in kind; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence. Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 823 (2001).  Thus, a continuing violation may exist where there is a company-wide policy or practice of discrimination, or a series of related acts against a single individual.  Morgan v. Regents of the Univ. of Cal., 88 Cal. App. 4th 52, 64 (1st Dist. 2001).[3]

---

[3] The United States Supreme Court held in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, that the continuing violation theory applies only to claims for hostile environment and not for claims stemming from discrete acts of discrimination. Id. at 114. Typically, California courts rely on federal law to interpret the portions of FEHA that are analogous to federal law. Mixon v. Fair Emp't & Hous. Comm'n, 192 Cal. App. 3d 1306, 1316 (6th Dist. 1987). The California Supreme Court declined to follow National Railroad Passenger Corp. v. Morgan, however, in Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028 (2005), because such a policy would discourage

12

"The plaintiff must demonstrate that at least one act occurred within the filing period and that 'the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination.'" Id. (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995)). As discussed above, plaintiff fails to claim that the defendant engaged in any racially discriminatory conduct after February 18, 2009. Plaintiff is therefore unable to demonstrate that actions taken within the filing period represent a continuation of defendant's practice of discrimination outside of the filing period.

    B.    <u>Discrimination Based on Mental Disability (Claims Two Through Seven)</u>

FEHA also makes it illegal for an employer "because of the . . . mental disability . . . of any person, to refuse to hire or employ the person." Cal. Gov't Code § 12940(a). Plaintiff's second through seventh causes of action assert claims under FEHA stemming from defendant's allegedly discriminatory actions on the basis of plaintiff's mental disability.

FEHA places primary responsibility for disposing of employment discrimination complaints with the Department of Fair Employment and Housing ("DFEH") in order to encourage informal conciliation of employment discrimination claims and foster voluntary compliance with FEHA. Rodriguez v. Airborne Express, 265 F.3d 890, 901 n.10 (9th Cir. 2001). A plaintiff must therefore exhaust his or her administrative remedies under FEHA and receive a right to sue letter from DFEH before seeking

---

informal resolution of disputes and encourage premature litigation. Id. at 1058.

judicial relief from the discriminatory action alleged in his or her administrative charge.  <u>Romano</u>, 14 Cal. 4th at 492.

Plaintiff alleged in his Complaint that he "submitted a complaint to the [DFEH] in order to administratively exhaust claims made under the auspices of the California Fair Employment and Housing Act.  On December 23, 2010, the [DFEH] issued a right to sue letter."  (Compl. ¶ 6.)  Plaintiff attached a copy of his DFEH complaint to his opposition to defendant's motion to dismiss.  (Gaspar Decl. Ex. B (Docket No. 7-1).)  The attached document is signed by plaintiff on December 18, 2010 -- the date alleged in the Complaint.  In the section entitled "Cause of Discrimination Based On," plaintiff checked the box for "RACE" and "OTHER."  In the space provided immediately after "OTHER," plaintiff typed in "RETALIATION."  In the description section, plaintiff noted several instances in which he alleged that he was subject to disparate treatment "because of my race (African-American) and terminated in retaliation for complaining."  (<u>Id.</u>)  Plaintiff did not assert that he was subject to disparate treatment because of a mental disability or that his retaliation bore any relationship to complaints about his alleged mental disability.  Defendant contends that plaintiff failed to exhaust his administrative remedies with respect to his alleged mental disability-based allegations because he did not include such claims in his DFEH complaint.

The scope of the written DFEH complaint defines the permissible scope of the subsequent civil action.  <u>Yurick v. Superior Court</u>, 209 Cal. App. 3d 1116, 1121-23 (3d Dist. 1989).  "Allegations in the civil complaint that fall outside of the

14

scope of the administrative charge are barred for failure to exhaust." Rodriquez, 265 F.3d at 897.  In order for plaintiff's charge of discrimination on the basis of race to be construed to include a claim of discrimination on the ground of mental disability, the mental disability ground would have to be "like or reasonably related to" the claim of race discrimination. Sandhu v. Lockheed Missiles & Space Co., 26 Cal. App. 4th 846, 859 (6th Dist. 1994).  "This standard is met where the allegations in the civil suit are within the scope of the administrative investigation 'which can reasonably be expected to grow out of the charge of discrimination.'" Rodriquez, 265 F.3d at 897 (quoting Sandhu, 26 Cal. App. 4th at 859.

        The court concludes that plaintiff's charge of discrimination on the basis of his race would not reasonably trigger an investigation into discrimination on the ground of mental disability.  The two claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other.  See Rodriquez, 265 F.3d at 897-98 (finding that plaintiff's timely exhaustion of his ethnic discrimination claim did not encompass his disability claim); see also Shah v. Mount Zion Hosp. & Med. Ctr., 642 F.2d 268, 271 (9th Cir. 1981) (affirming trial court's dismissal of plaintiff's civil claims based on race and religious discrimination because such allegations were not "reasonably related" to the allegations of sex discrimination explicitly listed in the EEOC Charge); Chaudhary v. Telecare Corp., No. 99-3189, 2000 WL 1721075, at *3 (N.D. Cal. Nov. 12, 2000) ("Because claims of sex and age discrimination are not

15

1  'reasonably related to' national origin/ancestry discrimination
2  DFEH charges, they must be dismissed for failure to exhaust
3  administrative remedies."). It would not be proper to expand
4  plaintiff's claim, when "the difference between the charge and
5  the complaint is a matter of adding an entirely new basis for the
6  alleged discrimination." Okoli, 36 Cal. App. 4th at 1615.
7  　　　　　Plaintiff suggests that any in-person interview by a
8  DFEH investigator would have led the investigator to uncover
9  plaintiff's mental disability discrimination claims. This is not
10 the test for determining whether plaintiff has exhausted his
11 administrative remedies. As discussed above, the court must look
12 to what is set forth in the administrative claim itself to
13 determine whether it was sufficient to place the examiner on
14 notice of the claims plaintiff seeks to bring in this action. If
15 simply alleging the mental disability-based allegations in this
16 action following his failure to properly exhaust his
17 administrative remedy were deemed sufficient, it would allow
18 plaintiff to bypass, and thus defeat, the exhaustion requirement
19 -- the purpose of which is "to give the administrative agency the
20 opportunity to investigate, mediate, and take remedial action."
21 Stewart v. U.S. Immigration & Naturalization Serv., 762 F.2d 193,
22 198 (2d Cir. 1985). Accordingly, the court will grant
23 defendant's motion to dismiss plaintiff's mental disability-based
24 discrimination claims (claims two through seven).
25 　　　　　IT IS THEREFORE ORDERED THAT defendant's motion to
26 dismiss be, and the same hereby is, GRANTED.
27 　　　　　Plaintiff has twenty days from the date of this Order
28 to file an amended complaint, if he can do so consistent with

16

1 | this Order.
2 | DATED:  April 9, 2012

*[Signature: William B. Shubb]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE